EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-14338-Cannon/McCabe

ALISA MARIE LYNCH and
PETER JAMES LYNCH,

      Plaintiffs,

v.

TANISHA BAILEY-ROKA,
MICHAEL DAVID HOLZKNECHT,
LEE J. ROHN & ASSOCIATES LLC, and
LEE JEANNETTE ROHN

      Defendants.

_____/

## REPORT AND RECOMMENDATION

      This case arises from civil litigation and attorney grievance proceedings pending or formerly pending in the United States Virgin Islands ("Virgin Islands"). Defendants have filed a Joint Motion to Dismiss the Case or Transfer Venue ("Motion") (DE 46), which has been referred to the undersigned by United States District Judge Aileen M. Cannon (DE 48). Defendants seek dismissal on several grounds including lack of personal jurisdiction, improper venue, and immunity. For the reasons set forth below, the undersigned **RECOMMENDS** that the Motion be **GRANTED**.

## I.    BACKGROUND

      Plaintiff Peter Lynch (hereafter "Husband") is an attorney who resides in Florida but maintains a law practice in the Virgin Islands (DE 13 ¶¶ 2, 25). Defendant Lee Rohn is an attorney in the Virgin Islands, practicing law through her law firm Lee J. Rohn & Associates, LLC (hereafter collectively the "Rohn Defendants") (DE 13 ¶¶ 7-8, 21). At some point in the past,

Husband became involved in litigation, as both opposing counsel and as an opposing party, against the Rohn Defendants (DE 13 ¶¶ 32, 60 n.1).  At some point in the past, the Rohn Defendants also advised one of Husband's former clients to file an attorney grievance against Husband in the Virgin Islands (DE 13 ¶ 32).  Defendant Michael Holzknecht (hereafter "Bar Counsel 1"), an employee of the Office of Disciplinary Counsel for the Supreme Court of the Virgin Islands, handled the attorney grievance against Husband (DE 13 ¶¶ 54-55, 110).  Bar Counsel 1 works remotely from the State of Missouri (DE 13 ¶ 52).

Separate and apart from these matters, in or around March 2021, Husband began divorce proceedings against his wife, Plaintiff Alisa Lynch (hereafter "Wife), in the Virgin Islands (DE 13 ¶ 29).  Wife, who resides in Florida, retained the Rohn Defendants to represent her in the Virgin Islands divorce (DE 13 ¶ 35).  Thereafter, on or about April 30, 2021, Husband dismissed the Virgin Islands divorce case (DE 13 ¶ 36).

Plaintiffs allege that the Rohn Defendants, who are not licensed to practice law in Florida, then agreed to assist Wife in filing a new divorce case in Florida (DE 13 ¶¶ 38, 41).  Sometime in May 2021, Wife filed for divorce in Florida (DE 13 ¶ 44).  The Rohn Defendants hired the process server to effect service on Husband and ghost-drafted the Notice of Proof of Service (DE 13 ¶ 44).

During the time period of the Rohn Defendants' legal representation, Wife disclosed confidential information to the Rohn Defendants about Husband (hereafter the "Confidential Information") (DE 13 ¶¶ 46, 76).  On April 27, 2021, the Rohn Defendants, who were located in the Virgin Islands at the time, emailed this Confidential Information to Bar Counsel 1 (DE 13 ¶¶ 46, 56).  Thereafter, Bar Counsel 1 made a series of communications to Wife in Florida (by telephone, text, and email) concerning Husband (DE 13 ¶¶ 61, 65).  During these communications, Bar Counsel 1 initially failed to disclose that he worked for the Virgin Islands Supreme Court, and

Wife mistakenly believed he worked for the Rohn Defendants, i.e., her own lawyers (DE 13 ¶¶ 64, 66). During these communications, Wife disclosed additional Confidential Information to Bar Counsel 1 (DE 13 ¶¶ 70, 74; DE 13-1 at 39).

On May 25, 2021, Bar Counsel 1, who was in Missouri at the time, sent a letter to his supervisor, Tanisha Bailey-Roka (hereafter "Bar Counsel 2"), who was in the Virgin Islands at the time, relaying the Confidential Information (DE 13 ¶¶ 71, 76, Ex. D). On that same day, Bar Counsel 1 sent an email to Wife in Florida soliciting Wife to file a Virgin Islands attorney grievance against Husband (DE 13 ¶ 78).

Next, in February 2022, Bar Counsel 2 sent a certified mailing to another unnamed attorney in Florida, forwarding a copy of yet another Virgin Islands bar grievance (hereafter the "Third-Party Grievance"), which had been filed against that Florida attorney (DE 13 ¶ 108). The Third-Party Grievance related to Husband's earlier grievance and involved the same client (DE 13 ¶ 108). Plaintiffs allege that Exhibit 10 to the Third-Party Grievance consisted of a portion of a document that Bar Counsel 1 had earlier filed in connection with Husband's own grievance proceedings (DE 13 ¶ 110). Plaintiffs allege that Virgin Islands bar rules prohibited Bar Counsel 2 from allowing Exhibit 10 to be disclosed to the third-party Florida attorney who was the subject of the Third-Party Grievance (DE 13 ¶¶ 111-12). Plaintiffs further allege that Bar Counsel 2 violated bar rules and committed other misconduct by sending the certified mailing (DE 13 ¶¶ 111-12).

On September 26, 2022, Plaintiffs filed the instant action in the Southern District of Florida (DE 1). Plaintiffs thereafter filed a First Amended Complaint on October 17, 2022 (DE 9), and a Second Amended Complaint on October 21, 2022 ("SAC") (DE 13). The SAC alleges fifteen (15) counts as follows:

| Count | Action | Plaintiffs | Defendants |
|-------|--------|-----------|------------|
| I | Malpractice & Breach of Fiduciary Duty | Wife | Rohn Defendants |
| II | Fraud & Concealment | Wife | Rohn Defendants |
| III | Malpractice & Breach of Fiduciary Duty | Wife | Bar Counsel 1, individually |
| IV | Fraud & Concealment | Wife | Bar Counsel 1, individually |
| V | Fraud & Concealment | Wife | Bar Counsel 2 individually |
| VI | Invasion of Privacy by Intrusion | Wife & Husband | Rohn Defendants, Bar Counsel 1 & 2, individually |
| VII | Declaratory Judgment-Violation of Florida's Right to Privacy | Wife & Husband | Bar Counsel 1 & 2, official capacity |
| VIII | Intentional Infliction of Emotional Distress | Wife & Husband | Rohn Defendants, Bar Counsel 1, individually |
| IX | Negligence, Breach of Confidentiality | Husband | Bar Counsel 2, individually |
| X | 42 U.S.C. § 1983, Fourth Amendment Violation | Wife & Husband | Rohn Defendants, Bar Counsel 1, individually |
| XI | 42 U.S.C. § 1983, Commerce Clause Violation | Husband | Bar Counsel 1 & 2, individually |
| XII | 42 U.S.C. § 1985, Fourteenth Amendment Violation of Equal Protection | Husband | Rohn Defendants, Bar Counsel 1 & 2, individually |
| XIII | Defamation, per se | Husband | Rohn Defendants, Bar Counsel 1, individually |
| XIV | Abuse of Process | Husband | Rohn Defendants, Bar Counsel 1, individually |
| XV | Declaratory Judgment | Husband & Wife | Rohn Defendants, Bar Counsel 1 & 2, |

| | | | individually & official capacity |
|---|---|---|---|

(DE 13).

This Motion followed (DE 46), seeking dismissal on multiple grounds. The Court will address each argument in turn.

## II. PERSONAL JURISDICTION

Defendants first urge dismissal based on lack of personal jurisdiction. To determine personal jurisdiction, this Court must look to Florida's long-arm statute, Fla. Stat. § 48.193, which requires the application of a two-pronged test. First, the Court must determine whether the statute itself authorizes personal jurisdiction. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). In making this determination, the Court must construe the language of the long-arm statute "strictly." *Id.* at 627. Next, if the long-arm statute has been satisfied, the Court must determine whether the exercise of jurisdiction satisfies the Fourteenth Amendment's Due Process Clause, including an analysis of the non-resident defendants' "minimum contacts" with the forum state. *Id.* at 626.

In applying this two-pronged test, the Court follows a burden-shifting analysis. First, Plaintiffs bear the initial burden of alleging sufficient facts to make out a prima facie case of personal jurisdiction. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). Next, the burden shifts to Defendants to submit affidavits to contradict Plaintiffs' allegations. *Id.* The burden then returns to Plaintiffs to produce counter-affidavits supporting personal jurisdiction. *Id.* If possible, the Court must reconcile the affidavits. *Id.* Where the parties' affidavits cannot be reconciled, however, the Court must conduct an evidentiary hearing to resolve the jurisdictional issue. *Abramson v. Walt Disney Co.*, 132 F. App'x 273, 275 (11th Cir. 2005) (citing *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 503 (Fla. 1989)).

5

The Court finds no evidentiary hearing necessary in this case. Rather, based on the allegations of the SAC and the parties' respective affidavits, the Court finds Plaintiffs cannot satisfy the first prong necessary for personal jurisdiction, i.e., Florida's long-arm statute does not authorize personal jurisdiction over Defendants. Plaintiffs rely on two sections of the statute to support jurisdiction, each of which the Court will address in turn.

### A. Fla. Stat. § 48.193(1)(a)(2) – Committing a Tort Within this State

Plaintiffs first point to § 48.193(1)(a)(2), which provides:

(1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:

…

2. Committing a tortious act within this state.

Plaintiffs argue this provision authorizes jurisdiction because Defendants reached into the State of Florida by telephone, text, and mail to commit torts (DE 47 at 13). As set forth below, the Court disagrees.

As the Eleventh Circuit has recognized, "[f]or personal jurisdiction to attach under the 'tortious activity' provision of the Florida long-arm statute, the plaintiff must demonstrate that the non-resident defendant 'committed a substantial aspect of the alleged tort in Florida' by establishing that the activities in Florida 'w[ere] essential to the success of the tort.'" *Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389, 394 (11th Cir.1988) (citations omitted); *see also Rautenberg v. Falz*, 193 So. 3d 924, 930 (Fla. 2d DCA 2016) ("The statute's language necessarily focuses analysis not on where a plaintiff ultimately felt damages, but where a defendant's tortious conduct occurred.") (cleaned up).

A tortious act can occur through a non-resident defendant's telephonic, electronic, or written communications into Florida, so long as the cause of action "arise[s] from the communications." *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). In this regard, the phrase "arises from" necessarily "focuses analysis not on where a plaintiff ultimately felt damages, but where a defendant's tortious conduct occurred." *Metnick & Levy, P.A. v. Seuling*, 123 So. 3d 639, 645 (Fla. 4th DCA 2013). "[M]ere injury in Florida resulting from a tort committed elsewhere is insufficient to support personal jurisdiction over a nonresident defendant." *Kaminsky v. Hecht*, 272 So. 3d 786, 788 (Fla. 4th DCA 2019) (quoting *Consol. Energy Inc. v. Strumor*, 920 So. 2d 829, 832 (Fla. 4th DCA 2006)); *see also Prunty v. Arnold & Itkin LLP*, 753 F. App'x 731, 735 (11th Cir. 20018) (finding no personal jurisdiction where non-resident defendant used electronic communications to reach into Florida to procure an agreement for attorney services to be rendered outside of Florida).

The Court now turns to the torts alleged against each set of Defendants.

### 1. Torts Alleged against the Rohn Defendants

As to the Rohn Defendants, the Court has reviewed the allegations of the SAC and finds no torts committed in the State of Florida within the meaning of § 48.193(1)(a)(2). As to Count I for legal malpractice, for example, the SAC alleges the existence of an attorney-client relationship that straddled both the Virgin Islands and the State of Florida (DE 13 ¶¶ 35, 44). The key act of malpractice, however, consists of the Rohn Defendants' betrayal of the attorney-client relationship by relaying Wife's Confidential Information by way of an email sent from the Virgin Islands to Bar Counsel 1 in Missouri, allegedly to promote the prosecution of attorney grievances in the Virgin Islands (DE 13 ¶ 46). This same act forms the basis of Count II (Fraud & Concealment), Count VI (Invasion of Privacy by Intrusion), Count VIII (Intentional Infliction of Emotional

Distress), Count X (42 U.S.C. § 1983), Count XII (42 U.S.C. § 1985), Count XIII (Defamation, per se), Count XIV (abuse of process), and Count XV (Declaratory Judgment).

The mere fact that portions of a given fact pattern take place in Florida does not equate to commission of a tort in the state for purposes of § 48.193(1)(a)(2). Instead, the long-arm statute requires that the non-resident defendant committed a substantial aspect of the alleged tort in Florida. *Williams Elec. Co.*, 854 F.2d at 394. On close review, the key events here took place outside of Florida. At its core, this case involves an attorney-client relationship with a Virgin Islands attorney and an alleged betrayal of that relationship in the Virgin Islands – all in an effort to promote the filing of attorney grievances in the Virgin Islands.

The Court must give strict construction to § 48.193(1)(a)(2). *Seabra v.Int'l Specialty Imports, Inc.*, 869 So. 2d 732, 733 (Fla. 4th DCA 2004); *Blumberg v. Steve Weiss & Co. Inc.*, 922 So. 2d 361, 363 (Fla. 3d DCA 2006). Applying strict construction here, the Court finds Plaintiffs cannot show the Rohn Defendants committed a tort in the State of Florida within the meaning of § 48.193(1)(a)(2).

### 2. Torts Alleged against Bar Counsel

As to Bar Counsel, the Court has likewise reviewed the allegations of the SAC and finds very little conduct committed in Florida, other than the following:

- Bar Counsel 1 made multiple communications into Florida, during which he initially failed to inform Wife that he worked for the Virgin Islands Supreme Court, leaving her to believe he worked for the Rohn Defendants (DE 13 ¶¶ 61-65).

- On May 25, 2021, Bar Counsel 1 sent a letter to Wife in Florida, seeking to solicit her to file a Virgin Islands attorney grievance against Husband (DE 13 ¶ 78, Ex. D).

8

- In February 2022, Bar Counsel 2 sent Confidential Information related to Husband's pending attorney grievance proceedings to a third-party attorney in Florida as part of the Third-Party Grievance (DE 13 ¶¶ 106-110).

These acts form the basis of Count III (Malpractice & Breach of Fiduciary Duty), Count IV (Fraud & Concealment), Count V (Fraud & Concealment), Count VI (Invasion of Privacy by Intrusion), Count VIII (Intentional Infliction of Emotional Distress), Count IX (Negligence, Breach of Confidentiality), Count X (42 U.S.C. § 1983), Count XI (42 U.S.C. § 1983), Count XII (42 U.S.C. § 1985), Count XIII (Defamation, per se), and Count XIV (abuse of process).

The Court finds these allegations, even when taken as true and construed in a light most favorable to Plaintiffs, do not show the commission of a tort in the State of Florida because, as explained more fully in section IV below, Bar Counsel enjoy quasi-judicial/prosecutorial immunity under both federal and Florida common law for the causes of action alleged against them in the SAC. Accordingly, the Court finds Plaintiffs cannot satisfy the requirements of § 48.193(1)(a)(2) as to Bar Counsel.

### B. Fla. Stat. § 48.193(1)(a)(6)(a) – Soliciting in State

Alternatively, Plaintiffs point to § 48.193(1)(a)(6)(a), which provides:

(1)(a)   A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:

…

6.   Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

a.   The defendant was engaged in solicitation or service activities within this state; or

      b.   Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

Plaintiffs argue this provision authorizes jurisdiction because Defendants caused "injury" while engaged in "solicitation" and "services" within the State of Florida.  Specifically, Plaintiffs argue that Bar Counsel 1 "solicited" Wife to file an attorney grievance, and that the Rohn Defendants provided legal "services" to Wife, thereby satisfying the statute (DE 47 at 14).

The Court does not agree.  In *Aetna Life & Cas. Co. v. Therm–O–Disc, Inc.*, 511 So. 2d 992, 994 (Fla. 1987), the Florida Supreme Court recognized that § 48.193(1)(a)(6) (then codified as § 48.193(1)(f)) applies only when a defendant's out-of-state actions cause personal injury or damage to physical property in the State of Florida.  *See also Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) (recognizing that § 48.193(1)(a)(6) applies only to cases involving personal injury or damage to physical property).  Here, the SAC does not allege personal injury or damage to physical property, but instead alleges financial harm and emotional distress (DE 13 ¶¶ 122-23, 133-34, 148-49, 159-60, 171-72, 184-86, 215-17, 232-33, 254-56, 268, 291, 309-13, 324).  As such, the Court finds § 48.193(1)(a)(6)(a) does not apply to this case.

### C.    Due Process Concerns

In light of the Court's conclusion that Plaintiffs cannot satisfy the first part of the two-pronged test for personal jurisdiction, the Court "need not address whether the exercise of personal jurisdiction would violate the Due Process Clause."  *Prunty,* 753 F. App'x at 734 n.2.  The Court therefore recommends that the Motion be granted and that the case be dismissed for lack of personal jurisdiction over Defendants.

Given this recommendation, the Court need not address Defendants' remaining arguments for dismissal.  Nevertheless, for the sake of completeness and for the benefit of the District Court,

the undersigned makes the following alternative recommendations.

## III.    IMPROPER VENUE

Pursuant to Federal Rule of Civil Procedure 12(b)(3), Defendants next seek dismissal, or alternatively, transfer to the District Court of the Virgin Islands based on improper venue.  When a defendant invokes Rule 12(b)(3), "the plaintiff bears the burden of showing that the venue selected is proper." *Hemispherx Biopharma, Inc. v. MidSouth Cap., Inc.*, 669 F. Supp. 2d 1353, 1356 (S.D. Fla. 2009).  In resolving Rule 12(b)(3) motions, courts may consider evidence outside the pleadings and make findings of fact necessary to resolve the motion.  *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008).  All facts alleged in the complaint must be accepted as true, provided they are not controverted by the defendant's evidence.  *Delong Equip. Co. v. Wash. Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988).

To determine the propriety of venue, courts look first to 28 U.S.C. § 1391, which provides:

A civil action may be brought in–

(b)(1)    a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2)    a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3)    if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

*See Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013) (noting that, when a party challenges venue, the court must determine whether the case falls within one of the categories set forth in 28 U.S.C. § 1391(b)).

If a court determines venue to be improper, the court must then look to 28 U.S.C. § 1406(a), which directs the court to either (1) dismiss the case, or (2) "if it be in the interest of justice, transfer

such case to any district or division in which it could have been brought." *Pac. Solar Energy, S.A. de C.V. v. U. S. Dep't of the Treasury*, No. 16-25324-CV, 2017 WL 6730069, at *5 (S.D. Fla. Dec. 29, 2017) (citing 28 U.S.C. § 1406(a)). Courts enjoy broad discretion in deciding whether to dismiss or transfer a case in such circumstances. *Id.*

### A. Transactional Venue

Here, the SAC alleges venue to be proper because "a substantial part of the events or omissions complained of herein arose from Defendants' intentional and purposeful availment of benefits and privileges to conduct business in Florida" (DE 13 ¶ 14). The Court interprets this allegation to invoke 28 U.S.C. § 1391(b)(2), frequently referred to as the "transactional venue" provision.

Transactional venue "focuses on whether a substantial part of the events or omissions giving rise to the claim occurred in this district" as well as on the "relevant activities of the defendant, not of the plaintiff." *Robey v. JPMorgan Chase Bank, N.A.*, 343 F. Supp. 3d 1304, 1314 (S.D. Fla. 2018) (cleaned up); *see also Silver v. Karp*, No. 14-80447-CIV, 2014 WL 4248227, at *3 (S.D. Fla. Aug. 27, 2014) ("[T]he Eleventh Circuit has stated that 'only the events that directly give rise to a claim are relevant' and that 'of the places where the events have taken place, only those locations hosting a "substantial part" of the events are to be considered.'") (quoting *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003)).

Although personal jurisdiction and venue are closely related, "[v]enue is distinct from jurisdiction," and "[v]enue may be proper or improper, independent of questions of subject matter or personal jurisdiction." *Driscoll v. New Orleans Steamboat Co.*, 633 F.2d 1158, 1159 n.1 (5th Cir. 1981). "It has long been recognized that the question of a federal court's competence to exercise personal jurisdiction over a defendant is distinct from the question of venue." *FTC v.*

*Alternatel, Inc.*, No. 08-21433-CIV, 2008 WL 11333090, at *3 (S.D. Fla. Oct. 27, 2008).

The Court has reviewed the allegations of the SAC and finds they do not satisfy the test for transactional venue. As explained earlier, the key events here took place outside the Southern District of Florida. At its core, this case involves an attorney-client relationship with a Virgin Islands attorney and an alleged betrayal of that relationship in the Virgin Islands – all in effort to promote the filing of attorney grievances in the Virgin Islands. To be sure, portions of the fact pattern took place in Florida, but the Court finds these portions ancillary and not "substantial" as required by § 1391(b)(2).

### B.     Transfer

Given this finding, the Court must next consider whether, pursuant to 28 U.S.C. § 1406(a), the case should be (1) dismissed, or (2) transferred. Plaintiffs argue against transfer, pointing out that the District Court of the Virgin Islands is not an Article III court (DE 47 at 15), and cite 28 U.S.C. § 1404(d), which provides:

> Transfers from a district court of the United States to ... the District Court of the Virgin Islands *shall not be permitted under this section*.

28 U.S.C. § 1404(d) (emphasis added).

The Court finds that § 1404(d) poses no bar to transfer in this case. Congress added the above sentence to § 1404(d) as part of the Federal Courts Jurisdiction and Venue Clarification Act. *See* 2011, Pub. L. No. 112–63, 125 Stat. 758, 764 (2011). The operative sentence amended 28 U.S.C. § 1404, which itself served as a codification of the common law doctrine of forum non convenience, a doctrine that applies when a plaintiff files suit in a *proper* venue at the outset, but where other more convenient alternative venues also exist. The instant case, in contrast, involves a transfer that arises under 28 U.S.C. § 1406, titled "Cure or waiver or defects." This section applies when a plaintiff files in an *improper* venue at the outset, and it allows courts to transfer the

13

case in order to cure the defect.  28 U.S.C. § 1406(a).

Congress could have added the above sentence to both § 1404 and § 1406, but chose not to do so.  Instead, Congress left the following language of § 1406 undisturbed:

§ 1406 - Cure or waiver of defects

(a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case *to any district* or division *in which it could have been brought*.

…

(c) *As used in this section, the term "district court" includes … the District Court of the Virgin Islands, and the term "district" includes the territorial jurisdiction of each such court.*

28 U.S.C. § 1406(a), (c) (emphasis added).  The Court interprets this language to permit transfer to the District Court of the Virgin Islands.  *See Gillham v. V.I. Sup. Ct.*, No. 3:22-cv-00611-M-BT, 2022 WL 2975469, at *5 (N.D. Tex. July 11, 2022), *R.R. adopted, Gillham v. V.I. Sup. Ct.*, 2022 WL 2972605 (N.D. Tex. July 27, 2022) (ordering transfer to the Virgin Islands).

The Court recommends that, in the interest of justice, the case be transferred to the District of the Virgin Islands.  All Defendants reside in or have substantial contacts with the Virgin Islands.  One of the plaintiffs, Husband, maintains a law practice in the Virgin Islands (DE 13 ¶ 25).  The other plaintiff, Wife, previously engaged counsel in the Virgin Islands (DE 13 ¶¶ 30, 35).  The Court has considered Plaintiffs' arguments against transfer but finds them outweighed by the factors in favor of transfer.  Accordingly, assuming the District Court does not accept the recommendations set forth in section II, the Court recommends transfer to the District of the Virgin Islands.

## IV.    IMMUNITY

Next, all Defendants urge dismissal based on various forms of immunity.  Assuming the District Court does not accept the recommendations set forth in sections II or III, the Court makes the following alternative recommendations as to Defendants' immunity arguments.

### A.    Bar Counsel Official Capacity Claims

Plaintiffs bring two counts against Bar Counsel in their official capacities, Counts VII and XV, both seeking declaratory relief (DE 13 at 25-26, 46-47).  An official capacity claim is, in all respects other than name, a suit against the entity itself.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  As such, Plaintiffs have sued the Supreme Court of the Virgin Islands, an arm of the Territory of the Virgin Islands, which itself is an entity created under the Revised Organic Act of the Virgin Islands, 48 U.S.C. §1541 *et seq.* (the "Organic Act").  The Organic Act confers upon the Virgin Islands "attributes of autonomy like those of a sovereign government or a state." *Russell v. Richardson*, 905 F.3d 239, 253 (3d Cir. 2018). "One of those attributes is that 'no tort action shall be brought against the government of the Virgin Islands or against any officer or employee thereof in his official capacity without the consent of the legislature.'" *Id.* (citing 48 U.S.C. § 1541(b)).  In this regard, the Virgin Islands enjoys sovereign immunity akin to that enjoyed by states.  *Cf. McCauley v. Univ. of V.I.*, 618 F.3d 232, 239-240 (3d Cir. 2010) (noting that territories and their employees, acting in an official capacity, are not "persons" under § 1983).

Based on this sovereign immunity, Bar Counsel argue the official capacity claims against them must be dismissed.  The Court agrees and reaches this conclusion even though Counts VII and XV seek declaratory relief rather than monetary damages.  In *Ex parte Young*, the Supreme Court recognized a narrow exception to sovereign immunity for lawsuits that seek *prospective* declaratory or injunctive relief regarding ongoing violations of federal law.  209 U.S. 123, 155-56

(1908); *see also Seminole Tribe of Fla. v. Fla. Dep't of Rev.*, 750 F.3d 1238, 1242 (11th Cir. 2014) (analyzing and applying *Ex parte Young*).

The Court has reviewed the declaratory judgment counts here and finds them to be *retrospective* in nature. Counts VII and XV, for example, ask this Court to declare that Bar Counsel "conducted an unlawful search of [Plaintiffs'] marriage," and that Bar Counsel "acted in bad faith and in violation of their duties as attorney disciplinary authorities" (DE 13 at 197, 330). The narrow exception to sovereign immunity recognized by *Ex parte Young* does not cover retrospective declarations over past actions, such as those requested here. *See Allen v. Smith*, No. 12cv1668, 2013 WL 950735, at *10 n.3 (S.D. Cal. Mar. 11, 2013) (finding *Ex parte Young* inapplicable to declaratory action that sought retrospective relief); *see also Seminole Tribe of Fla.*, 750 F.3d at 1245 (noting that sovereign immunity bars actions that seek an "award of money damages camouflaged as an injunction or a declaratory judgment"). As such, the Court recommends dismissal of Counts VII and XV based on sovereign immunity.

### B. Bar Counsel Individual Capacity Claims

Plaintiffs bring eleven counts against Bar Counsel in their individual capacities, consisting of a collection of Florida common law claims (Counts III, IV, V, VI, VIII, IX, XIII, and XIV) and federal statutory claims (Counts X, XI, and XII). Bar Counsel move to dismiss these claims based on the common law doctrines of judicial and prosecutorial immunity. As set forth below, the Court agrees.

As a general rule, under both federal and Florida common law, judges enjoy immunity from liability for damages for acts committed within their judicial jurisdiction. *Stevens v. Osuna*, 877 F.3d 1293, 1301 (11th Cir. 2017); *see also* Fla. Jur. 2d Civil Servants § 72, Mar. 2013 (noting that "[a]bsolute immunity has been recognized for judges in their judicial functions …"). Although

a judge's error may be corrected on appeal, he should not have to fear that unsatisfied litigants may pursue litigation charging malice or corruption, which would not promote principled or fearless decision-making. *Stevens*, 877 F.3d at 1301. This immunity applies to claims made in an individual capacity. *Id.*

Similarly, under both federal and Florida common law, prosecutors enjoy "absolute immunity for certain functions intimately associated with the judicial process." *Hart v. Hodges*, 587 F.3d 1288, 1295 (11th Cir. 2009); *see also* Fla. Jur. 2d Civil Servants § 72, Mar. 2013 (noting that "[a]bsolute immunity has been recognized for … prosecuting attorneys with respect to performance of their quasi-judicial functions of initiating or maintaining a prosecution…."). Prosecutorial immunity extends to any actions a prosecutor takes in his or her role as "an advocate for the state." *Hart*, 587 F.3d at 1295. Prosecutorial immunity is so potent that "even if [prosecutors] knowingly proffered perjured testimony and fabricated exhibits at trial, [they] are entitled to absolute immunity from liability for doing so." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1279-80 (11th Cir. 2002).

Frequently, courts must determine whether to apply immunity to government officials whose job duties resemble, but do not squarely fall within, the definition of either judge or prosecutor. In such situations, courts apply a "functional approach" that considers (1) the need to assure that the individual can perform his functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (3) insulation from political influence; (4) the importance of precedent; (5) the adversary nature of the process; and (6) the correctability of error on appeal. *Stevens*, 877 F.3d at 1302; *see also Hart*, 587 F.3d at 1294-95 (noting that the functional approach "looks to the nature of the function performed, not to the identity of the person who performed it").

In *Watson v. Florida Judicial Qualifications Commission*, the Eleventh Circuit used the functional approach to determine that members of the Florida Judicial Qualification Commission hearing and investigative panels were entitled to immunity based on the functions of their respective positions. 746 F. App'x 821, 823 (11th Cir. 2018). As to members of the hearing panel, the *Watson* court reasoned that such members were functionally similar to judges and were therefore entitled to a quasi-judicial immunity. *Id.* at 825. As to members of the investigative panel, the *Watson* court reasoned that such members were "functionally similar to prosecutors when they present their case to the hearing panel" and, as such, were entitled to a quasi-prosecutorial immunity. *Id.* at 825-26.

This Court reached the same conclusion as to Bar Counsel. Rule 203(c) of the Virgin Islands Supreme Court Rules provides for the appointment of disciplinary counsel by the Supreme Court with powers and duties including: (a) screening and evaluating information concerning lawyer conduct; (b) investigating attorney misconduct, (c) prosecuting disciplinary cases; (d) notifying claimants and respondents concerning the disposition of the matter; and (e) taking other action as directed by the Supreme Court. V.I.S.CT.R. 203(c). The alleged misconduct in this case involves activities that fall within the scope of these functions. As such, the Court finds that Bar Counsel enjoy quasi-judicial/prosecutorial immunity, and the Court recommends dismissal of Counts III, IV, V, VI, VIII, IX, X, XI, XII, XIII, and XIV as to Bar Counsel in their individual capacities.

### C. Rohn Defendants

Plaintiffs allege nine counts against the Rohn Defendants, again consisting of a collection of Florida common law claims (Counts I, II, VI, VIII, XIII, XIV), a declaratory action (Count XV), and federal statutory claims (Counts X and XII). The Rohn Defendants urge dismissal of all counts

based on the immunity provided by Virgin Island Supreme Court Rule 207.10, which provides:

> All communications to and from … the [Office of Disciplinary Counsel] relating to lawyer misconduct … shall be absolutely privileged, and *no civil suit predicated on those proceedings may be instituted against any complainant … or lawyer*. Members … of the ODC and its agents … shall be immune from civil suit for any conduct in the discharge of their official duties.

V.I. Sup. Ct. R. 207.10 (emphasis added).

The Court cannot agree. The Rohn Defendants have not cited any authority for the proposition that the Supreme Court of the Virgin Islands (or of any other territory or state) can promulgate a rule that immunizes parties from federal statutory or common law claims arising under the law of another state. Without such authority, this Court is skeptical that the Supreme Court of any given state or territory can pass a rule that overrides Congress or the common law of another state. This result might differ if choice-of-law analysis reveals that Virgin Islands common law governs the tort claims at issue. To the extent the case proceeds in this Court, Defendants remain free to raise this issue at a later stage of the litigation with appropriate briefing and factual development. In the meantime, the Court recommends the Motion be denied as to the Rohn Defendants on Counts I, II, VI, VIII, X, XII, XIII, XIV, and XV.

## V.   SERVICE OF PROCESS

Finally, Defendants urge dismissal based on defective service pursuant to Federal Rule Civil Procedure 4(j)(2) because Plaintiffs failed to serve the Governor of the Virgin Islands (DE 46 at 24-25). The Court finds this issue moot. Specifically, on February 23, 2023, Plaintiffs filed a Motion for Additional Extension of Time to Serve Process on the Governor of the Virgin Islands (DE 49). Four days later, Plaintiffs filed an Affidavit of Compliance, attesting to service of process (DE 51). As a result, on February 28, 2023, the District Court denied the motion for extension as moot (DE 53). Based on that order, the Court finds that process has been served and recommends

that the Motion be denied on this ground.

## VI.  RECOMMENDATION & NOTICE OF RIGHT TO OBJECT

For the reasons stated above, the undersigned respectfully **RECOMMENDS** that the Motion (DE 46) be **GRANTED** as follows:

1.      As set forth in Section II, the Motion should be **GRANTED** based on lack of personal jurisdiction over all Defendants.

2.      Alternatively, as set forth in Section III, the Motion should be **GRANTED** based on improper venue, and the case should be transferred to the District of the Virgin Islands.

3.      Alternatively, if the District Court does not accept the recommendations in (1) or (2) above, the Motion should be **GRANTED IN PART AND DENIED IN PART**, as set forth in sections IV and V, as follows:

      a.      The Court should dismiss Counts VII and XV against Bar Counsel in their official capacities based on sovereign immunity.

      b.      The Court should dismiss Counts III, IV, V, VI, VIII, IX, X, XI, XII, XIII, and XIV against Bar Counsel in their individual capacities based on quasi-judicial/prosecutorial immunity.

      c.      The Motion should be denied as to Counts I, II, VI, VIII, X, XII, XIII, XIV, and XV, against the Rohn Defendants in their individual capacities.

      d.      The Motion should be denied as to ineffective service of process.

4.      The Court further recommends that all dismissal ordered here be with prejudice. Although Plaintiffs are proceeding pro se, Plaintiff Peter Lynch is a practicing attorney, and Plaintiffs have had multiple opportunities to amend their complaint.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Aileen M. Cannon. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 13th day of April 2023.

_____
RYON M. MCCABE
U.S. MAGISTRATE JUDGE