**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

**\*\*\*\*\*\*\***

PETER J. LYNCH,                                         3:24-cv-00043
               Plaintiff,
       v.                                               Complaint for:
KATHRYN ANNE DONNELLY, in                               Injunctive Relief and
her official capacity as Virgin Islands                 Damages
Special Designated Disciplinary
Counsel, and in her Individual
Capacity, and
TANISHA BAILEY-ROKA, in her
Official capacity as Virgin Islands
Chief Disciplinary Counsel, and in
her Individual Capacity,
_____Defendants._____/

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**OPPOSITION TO DEFENDANTS' JOINT MOTION**
**TO DISMISS THE FIRST AMENDED VERIFIED COMPLAINT**

COMES NOW the Plaintiff, Peter James Lynch, Esq., *pro se*, and files his Memorandum in Support of his Opposition to the Defendants' Joint Motion to Dismiss the First Amended Verified Complaint [ECF 37] (the "joint motion"), and says:

### Introduction

This is a case in which this federal Court must initially decide whether it should abstain from interference in ongoing territorial court attorney disciplinary proceedings. Plaintiff maintains that it should not abstain. The most appropriate case to open the discussion on abstention is *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982). In *Middlesex*, the Supreme Court reversed the Third Circuit's reversal of a New Jersey district court's decision to abstain from involving itself in the ongoing disciplinary proceedings against respondent Lennox Hind. In his complaint to the district court, Hind had claimed that the New Jersey ethics rule under which he was being charged violated his First Amendment right to free speech and was unconstitutionally overbroad.

*Lynch v. Donnelly et al.*, 3:24-cv-43, Memo iso Opposition to Joint Motion to Dismiss
Page 2 of 21

Applying its own earlier precedent, the U.S. Supreme Court found *first* that state bar disciplinary hearings within the constitutionally prescribed jurisdiction of the State Supreme Court constitute an ongoing state judicial proceeding; and *second*, that the proceedings implicate important state interests. *Middlesex*, 457 U.S. at 432, referring to *Younger v. Harris*, 401 U.S. 37 (1971).

The *third* and final question to be decided regarding potential abstention in *Middlesex* (the three questions are now known as the *Middlesex* factors) boiled down to whether the respondent Hinds had an "adequate opportunity" to address his constitutional claims in the state court. Although Hinds contended that "there was no opportunity in the state disciplinary proceedings to raise his federal constitutional challenge to the disciplinary rules," the record on appeal showed that Hinds had "failed even to *attempt* to raise any federal constitutional challenge in the state proceedings." Noting that, prior to the filing for certiorari with the U.S. Supreme Court, "the New Jersey Supreme Court *sua sponte* entertained the constitutional issues raised by respondent Hinds," the U.S. Supreme Court held that abstention was appropriate because Hinds indeed "had abundant opportunity to raise his constitutional challenges in the state disciplinary proceedings."

The U.S. Supreme Court further elaborated, stating that "[s]o long as the constitutional claims of respondents can be determined in the state proceedings and so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." *Middlesex*, 457 U.S. at 432, 435. *See also Borowski v. Kean Univ.*, 68 F.4th 844, 849 (3rd Cir. 2023) (also citing to *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77-8, 134 S.Ct. 584, 187 L.Ed.2d 505 (2013)); *Feingold v. Off. of Disciplinary Counsel*, 487 F. App'x 743 (3d. Cir. 2012).

However, "[a] judicial exception […] [to the requirement of federal abstention] has been made where a person about to be prosecuted in a state court can show that he will, if the

*Lynch v. Donnelly et al.*, 3:24-cv-43, Memo iso Opposition to Joint Motion to Dismiss
Page 3 of 21

proceeding in the state court is not enjoined, suffer irreparable damages," and "when absolutely necessary for protection of constitutional rights, … under "extraordinary circumstances, where the danger of irreparable loss is both great and immediate."  See *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (cited by *Younger*, 401 U.S. 37, at 43, 45).

As a general rule, "a federal court's obligation to hear and decide a case" within its jurisdiction "is virtually unflagging," and a court has "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given."  *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77, 134 S.Ct. 584, 187 L.Ed.2d 505 (2013).

### This Court Must Not Abstain

Plaintiff's circumstances in the instant action differ markedly from those of respondent Hinds in *Middlesex* in several important respects, and demand a different result.  Unlike Hinds, Plaintiff alleges that he did raise his constitutional claims with the Board on Professional Responsibility and the Virgin Islands Supreme Court, but those claims were ignored by both. [ECF 26, ¶¶ 27-29,61-64, 84-86, 105-106].  [A 12, 16-20, 27-28, 31, 57, 59][1].  The highest Court of the Virgin Islands, charged with regulating the legal profession, has historically, repeatedly denied relief to petitioners seeking relief from the Virgin Islands ODC's failure to resolve attorney disciplinary matters for years, citing petitioners' failure to exhaust alternative remedies, and stating that aggrieved respondents have the option to bring an appeal <u>at the end</u>, following an adverse decision from the attorney disciplinary process.  [ECF 26, ¶¶ 27-29].  [A 1-10]. Unfortunately, the alternative remedy of an appeal is futile, representing no recourse whatsoever, because the ODC Defendants' process under Defendant Bailey-Roka <u>never ends</u>. Most cases are not advanced or dismissed for years, so there is no adverse decision to appeal. [ECF 26, ¶¶ 14-17].  Recognizing its futility because of the Virgin Islands Supreme Court's

---

[1] The Appendix filed herewith is the sole product of the Plaintiff, due to the Respondents' failure to confer.

habitual dismissal of constitutional complaints against ODC officers from other attorneys as well as himself, after the Board on Professional Responsibility's adverse decision completely ignoring his constitutional claims, this Plaintiff voluntarily dismissed S.Ct.Civ. No. 2024-32. [A 69].   It is Plaintiff's understanding that the expected usual final Order from the Virgin Islands Supreme Court in S.Ct.Civ. No. 2024-32, dismissing the matter because the purported alternative remedy of appeal would be available following an adverse decision, would cut off any remedy in this Court due to the Rooker-Feldman abstention doctrine.  Rather than wait and seek certiorari for a final adverse decision of the Virgin Islands Supreme Court to the U.S. Supreme Court well after his retirement age, Plaintiff chooses instead to seek relief now from the Virgin Islands disciplinary apparatus' deprivations of rights secured under the constitution from this Court, at the lowest possible federal level, while Case no. 2023-42 is still live.

As Plaintiff alleged, there has been no opportunity for meaningful review of his claims of deprivation of constitutional rights by the ODC staff.  [ECF 26, ¶¶ 27-29,61-64, 84-86, 105-106].  *Middlesex* prong three is not met.

Even if all three prongs of the *Younger* analysis (the *Middlesex* conditions) are met, federal courts may exercise their discretion to abstain unless there is a showing of "bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Middlesex Cnty. Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982)."  Cited by *Feingold v. Off. of Disciplinary Counsel*, 487 F. App'x 743 (3d. Cir. 2012).

Three factors that courts have considered in determining whether a prosecution is commenced in bad faith or to harass are: (1) whether it was frivolous or undertaken with no reasonably objective hope of success, see *Kugler v. Helfant*, 421 U.S. 117 (1975) (explaining that a bad faith prosecution "generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction"); (2) whether it was motivated by the defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights,

*Lynch v. Donnelly et al.*, 3:24-cv-43, Memo iso Opposition to Joint Motion to Dismiss
Page 5 of 21

see *Younger*, 401 U.S. at 48 (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 482 (1965)); and (3) whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions, cf. *Younger*, 401 U.S. at 49. These factors are important because the cost, anxiety, and inconvenience of defending against a single prosecution brought in good faith is not enough to establish the "great and immediate" threat of irreparable injury necessary to justify enjoining pending state proceedings. *Phelps v. Hamilton*, 59 F.3d. 1058, 1065 (10th Cir. 1995).

As Plaintiff alleged, ODC has neither advanced nor dismissed multiple disciplinary actions against him, for years. [ECF 26, ¶¶ 33-40]. This is one indicator this Court can consider in its determination of whether there is bad faith.

In light of the foregoing, as to the disciplinary matter 2023-42 that is the subject of this dispute, Plaintiff's federal, constitutional claims could not be litigated as a part of the disciplinary proceedings to which they relate, and would not be resolved there. In other words, within the Virgin Islands attorney disciplinary process, as it now exists, no constitutional safeguards exist to check ODC abuses. See *Addiction Specialists*, 411 F.3d at 411-12; *Am. Family Prepaid Legal Corp. v. Columbus Bar Ass'n*, 498 F.3d 328, 336 (6th Cir. 2007).

In sum, as the third prong of the *Middlesex* factors is missing, and there exist factual allegations tending to show ODC's interest in pecuniary gain, bias, and bringing of frivolous claims in bad faith, the District Court must not abstain in the instant case, but should instead act consistently with its unflagging obligation to exercise its jurisdiction. *Sprint*, 571 U.S. at 77.

Adding to the circumstances that make Plaintiff's situation extraordinary is that the Virgin Islands Supreme Court's own records, provided in its annual reports on the Virgin Islands judiciary, demonstrate that it routinely tolerates a massive backlog of active disciplinary

*Lynch v. Donnelly et al.*, 3:24-cv-43, Memo iso Opposition to Joint Motion to Dismiss
<u>Page 6 of 21</u>

actions, unresolved for years, even though its chief justice is on record stating that such a delay

is "unconscionable" and "unacceptable." [ECF 26, ¶¶ 14-17].   One hundred and forty-seven

(147) live attorney disciplinary actions in a legal community of about six hundred attorneys

regularly admitted to the Virgin Islands Bar is indeed unheard of, extraordinary, and completely

unacceptable.

Also, as indicia of incompetence or bad faith, Plaintiff alleged that Defendant Bailey-

Roka routinely fails to dismiss cases which on their face fail to raise a reasonable inference of

misconduct, in violation of V.I.S.Ct.R. 207.9(a)(ii)(A).  [ECF 26, ¶¶ 18-19].

Also, as evidence of bad faith in Case 2023-42, Plaintiff alleged that Defendants

Donnelly and Bailey-Roka are maintaining and refusing to dismiss a *sua sponte* disciplinary

action against Plaintiff which, on its face, raises no reasonable inference of misconduct, and

requires dismissal under V.I.S.Ct.R. 207.9(a)(ii)(A).  [ECF 26, ¶¶ 40-72].  Case 2023-42 has

no probability of achieving a valid conviction on the merits, and, Plaintiff alleges, was brought

solely to oppress and harass him.[2]  Attorney Bailey-Roka herself initiated Case 2023-42 despite

a conflict, in that she was Plaintiff's opposing counsel in the attorney Annual Registration

Statement cases upon which it is based.  As Plaintiff further alleged in his FAC [ECF 26],

---

[2] V.I.S.Ct.R. 211.7.3 permits attorneys to send solicitations to lawyers without including the markings "Advertising Material."   ODC admitted in Case no. 2023-42 that Plaintiff's correspondence was sent <u>to a lawyer</u>, which makes it exempt from the marking requirement. Also, as an element of a 211.7.3 violation, ODC must prove that the correspondence was sent "for pecuniary gain."  ODC failed even to address this element in its disciplinary complaint. Plainly, there exists no violation of 211.7.3, or even a reasonable inference of misconduct.  As for V.I.S.Ct.R. 211.7.1, Defendant Donnelly's letter referenced the materials included with Case no. 2023-42, stating "[t]he Office of Disciplinary Counsel is attaching documents that suggest you made fraudulent or deceptive statements to at least one member of the Virgin Islands Bar Association … ."  [ECF 26-1].  However, an objective reading of the attached documents suggests no such thing.  Defendants would need some basis to reach a reasonable inference of misconduct, such as evidence tending to show the falsity of Plaintiff's statement. To prevail in Case no. 2023-42 against Plaintiff, Defendants Donnelly or Bailey-Roka would need to prove the falsity of Plaintiff's statement by clear and convincing evidence.  However, Defendants have no evidence whatsoever of falsity.  These actions are all evidence of ODC's bad faith.

Defendant Bailey-Roka's failure to advance or dismiss several other disciplinary matters against him, for years, is yet one more fact this Court may consider as evidence of either bad faith or incompetence of members of ODC who do this, the delay of which violates both procedural and substantive due process under the Fifth and Fourteenth Amendments. [ECF 26, ¶ 33]. Additional evidence of bad faith and "targeting" of Plaintiff comes in the form of multiple disciplinary actions of questionable legitimacy, as alleged in the FAC. [ECF 26, ¶¶ 34-38]. Following the Board's June 25, 2021, decision to stay Case no. 2018-11 against Plaintiff, Defendant Bailey-Roka permitted related Case no. 2018-11A to be filed, and also permitted related Case no. 2021-13 to be filed by Plaintiff's opposing counsel in the civil action related to 2018-11, which opposing counsel purported to file "on behalf of" her client.[3] [ECF 26, ¶¶ 34-36]. In 2021-38, Defendant Bailey-Roka docketed a disciplinary complaint against Plaintiff for filing a disciplinary complaint against members of ODC with a Virgin Islands Superior Court judge. [ECF 26, ¶ 37]. Defendant Bailey-Roka also docketed Case no. 2022-32 against Plaintiff, in which the relative of a recently deceased defendant complained about Plaintiff regarding a case where Plaintiff represented the plaintiffs.[4] [ECF 26, ¶ 38]. Plaintiff alleged that none of the multiple, foregoing disciplinary cases have been dismissed or advanced, for years. [ECF 26, ¶ 39]. Finally, Plaintiff alleged that ODC's Case no. 2023-42 is frivolous on its face, and fails to raise a "reasonable inference of misconduct." [ECF 26, ¶ 40].

There is evidence that the disciplinary complaint against Plaintiff was frivolous, retaliatory, undertaken with no reasonable expectation of success, motivated by illegitimate considerations, and part of an "unjustified and oppressive use of multiple prosecutions,"

---

[3] V.I.S.Ct.R. 207, the Virgin Islands Rules of Attorney Disciplinary Enforcement, contain no provision which would allow complainants to be represented by counsel. Only respondents are parties to disciplinary actions, and are entitled to be represented by counsel.

[4] Plaintiff never represented this complainant, and owed her no duty.

*Lynch v. Donnelly et al.*, 3:24-cv-43, Memo iso Opposition to Joint Motion to Dismiss
Page 8 of 21

brought to harass and oppress Plaintiff.[5]  *Phelps v. Hamilton*, 59 F.3d 1058, 1065 (10th Cir. 1995); *see Kugler v. Helfant*, 421 U.S. 117, 126 n.6 (1975).  Significantly, this attorney disciplinary matter was generated *sua sponte* by Defendant Bailey-Roka within 30 days after Plaintiff exercised his First Amendment right to free speech by contacting a member of the bar to notify him of his ARS suspension and offer assistance. [ECF 26, ¶¶ 42-45].  This Court may consider this fact as an indicator that the disciplinary case was brought to punish Plaintiff for exercising his First Amendment right to free speech.  Please note that V.I.S.Ct.R. 211.7.3 expressly permits attorneys to contact other attorneys, and the contact is exempt from the consumer solicitation requirement that such communications be marked "Advertising Material."  Also, V.I.S.Ct.R. 211.7.1 does not prohibit truthful attorney advertising.  ODC's "charges" of misconduct contained in Exhibit A [ECF 1-1] to the Verified Complaint [ECF 1], and the documents submitted with them, contain no evidence whatsoever of ethical violations, and are therefore completely spurious, without basis.  Defendant Bailey-Roka's docketing of the attorney disciplinary complaint and Defendant Donnelly's continuing maintenance of it, and putting Plaintiff under threat of new charges of failure to cooperate under V.I.S.Ct.R. 211.8.1, if he does not provide an additional response, tend to show bad faith, harassment and oppression.

As Plaintiff alleged, the ODC has a pecuniary interest in suppressing Plaintiff's free speech of reaching out to assist other attorneys.  [ECF 26, ¶ 78].  Despite the ODC's vehement denial, it cannot be disputed that part of the fines and late fees derived from ARS suspensions go to the ODC:

> An attorney suspended pursuant to this Rule 203(e) may not be reinstated until and unless he or she has filed, and the Court granted, a petition for reinstatement evincing that the attorney has duly registered, paid the $50.00 annual assessment and $150.00 late filing fee, and also

---

[5] Of note, the Defendants appear to ignore V.I.S.Ct.R. 211.3.1, which prohibits the filing of claims without basis in fact or the law.  ODC's Case 2023-42 plainly violates this rule, which is an indicator of bad faith.

> paid a $200.00 delinquency fee. All fees assessed under this Rule 203(e) shall fund the operations of the Office of Disciplinary Counsel, the Board on Professional Responsibility, and the Board on Unauthorized Practice of Law.

V.I.S.Ct.R. 203(e).

The foregoing is merely one indicator that bias may exist. Based on this, the Court should find that Defendants' impartiality was compromised; arguably, the Defendants should have recused and sought the appointment of an independent reviewer to screen and evaluate Case no. 2023-42.

The circumstances described in the foregoing paragraphs demonstrate that Plaintiff alleged facts which evidence either such incompetence, or the "bad faith, harassment, or extraordinary circumstances" that would make this Court's abstention inappropriate.

Where, as here, *Younger* abstention is inappropriate, federal courts can and do entertain suits against state officials in their official capacities, brought by plaintiffs seeking prospective injunctive relief to end continuing violations of federal law. *Ex parte Young*, 209 U.S. 123 (1908); *Doheny v. Pennsylvania*, No. 17-2168, fn 9 (3rd Cir. Jul 23, 2019); *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 318 (3rd Cir. 2013); *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir.2002); *MCI Telecomm. Corp v. Bell Atl. Pa.*, 271 F.3d 491, 506 (3rd Cir.2001)). Defendants' assertion at pp. 11, 14-15 of their MISO MTD [ECF 38] that this Court has no authority to issue a writ against them in their official capacities, or to stay a state court proceeding, is simply wrong. Section 1983 is an express exception to 28 U.S.C. § 2283, the Anti-Injunction Statute. *Mitchum v. Foster*, 407 US 225 (1972).

Where *Younger* abstention is inappropriate, federal courts also may entertain suits for damages against state officials in their individual capacities under 42 U.S.C. § 1983, for their violation of a person's rights guaranteed by the Constitution. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

### Defendants are Not Immune

### The Defendants' Claims of Immunity Lack Merit

It is first necessary to dispel the commonly held, mistaken belief that government officials in certain positions are immune from liability for their actions, no matter what. Whether immunity is applicable at all is determined, not by the title held by the actor, but by the nature and function of the actions complained of. "In determining whether particular actions of government officials fit within a common-law tradition of absolute immunity, or only the more general standard of qualified immunity, we have applied a "functional approach," see, e.g., *Burns*, 500 U.S., at ----, 111 S.Ct., at 1939, which looks to "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White*, 484 U.S. 219, 224, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988). *Buckley v. Fitzsimmons*, 509 U.S. 259, 263, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993); *Roberts v. Lau*, 90 F.4th 618, 620 (3rd Cir. 2024). The determinate for questions of absolute immunity is not the position held by an official, but the function of her action complained of. For absolute immunity, it is insufficient for one to claim that one holds the position of a prosecutor. One must also demonstrate that the action complained of served a prosecutorial function. If a judge is not engaged in an action which serves a judicial function, he is not immune from suit for that action. Likewise, if a prosecutor is not engaged in an action which serves a prosecutorial role, she is not absolutely immune.

"We have recognized … that some officials perform "special functions" which, because of their similarity to functions that would have been immune when Congress enacted § 1983, deserve absolute protection from damages liability. *Butz v. Economou*, 438 U.S. 478, 508, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978). "However, [T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S., at ----, 111 S.Ct., at 1939. *Buckley v. Fitzsimmons*, 509 U.S. 259, 263, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

Officers of the ODC - whose unique position has been described as quasi-judicial, as well as quasi-prosecutorial (*In Re: Burns*, 2020 VI 16 (VI, 2020)) - in their individual capacities, cannot justify absolute immunity for their actions not related to a function of one of their roles.

Significantly, using the same functional analysis, the U.S. Supreme Court has permitted the Supreme Court of Virginia, acting in its enforcement capacity, to be sued for injunctive relief. *V. Consumers Union of United States, Inc*, 462 U.S. 1137 (1983). Since a state supreme court has been held not to enjoy sovereign immunity for its enforcement actions, members of the Virgin Islands ODC, sued in their official capacities, do not enjoy sovereign immunity in suits seeking injunctive relief.

Members of the ODC serve in both a quasi-judicial and a quasi-prosecutorial role. They may be eligible for judicial or prosecutorial immunity, depending on the function of the action complained of. The function inquiry must be fact specific, and not based on the identity or the position held by the official. If the function of their actions does not entitle them to absolute immunity, government officials, including members of the ODC sued in their individual capacities, may be entitled to qualified immunity. However, qualified immunity is not available if the federal statutory or constitutional right deprived by the ODC official was "clearly established" at the time of the actions complained of. "Clearly established" means that the law was clear enough that a reasonable official would understand that their actions were unlawful. Government officials are entitled to qualified immunity with respect to "discretionary functions." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The doctrine of qualified immunity gives officials "breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al–Kidd*, 563 U.S. 731, 743, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). For liability to attach to a government official, he must violate a "clearly established" statutory or Constitutional right. To be "clearly established,"

*Lynch v. Donnelly et al.*, 3:24-cv-43, Memo iso Opposition to Joint Motion to Dismiss
<u>Page 12 of 21</u>

"[it] is not necessary, of course, that "the very action in question has previously been held unlawful." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866, 198 L.Ed.2d 290 (2017). Rather, the test is "whether it would have been clear to a reasonable officer that the alleged conduct "was unlawful in the situation he confronted."" *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

### No Eleventh Amendment Immunity

The Eleventh Amendment has not been made applicable to the Virgin Islands, and, as Virgin Islands Government officials, Defendants are not entitled to Eleventh Amendment immunity.  48 U.S.C. § 1561.

### No Sovereign Immunity

"Congress did take common-law principles into account in providing certain forms of absolute and qualified immunity … and in excluding States and arms of the State from the definition of person, see *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Ngiraingas v. Sanchez*, 495 U.S. 182, 110 S.Ct. 1737, 109 L.Ed.2d 163 (1990); see also *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

"[A]s to persons that Congress subjected to liability [(referring to 42 U.S.C. § 1983)], individual States may not exempt such persons from federal liability by relying on their own common-law heritage.  *Howlett v. Rose*, 496 U.S. 356, 383, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990).

The foregoing simply means that the Virgin Islands Government and its Office of Disciplinary Counsel (the "state" and arms of the state) may be shielded from liability for damages by sovereign immunity, but they are not shielded from injunctive relief enjoining Constitutional violations.  By contrast, Defendants Donnelly and Bailey-Roka <u>in their individual capacities</u> are "persons that Congress subjected to liability," under 42 U.S.C. 1983

*Lynch v. Donnelly et al.*, 3:24-cv-43, Memo iso Opposition to Joint Motion to Dismiss
<u>Page 13 of 21</u>

et seq., and are not protected by sovereign immunity, and may be held fully liable for damages caused by their unconstitutional actions.

### No Absolute Prosecutorial Immunity

"A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity. See *Burns*, 500 U.S., at ----, 111 S.Ct., at 1944." *Buckley v. Fitzsimmons*, 509 U.S. 259, 265, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Thus, a prosecutor taking on the role of a complainant is not performing a discretionary function of a prosecutor, and is not entitled to absolute immunity. At most, qualified immunity could apply, but, as noted below, the applicability of qualified immunity is limited.

Here, Defendant Bailey-Roka investigated, gathered evidence, and brought Case 2023-42 *sua sponte*. [ECF 26, ¶¶ 43-44]. For these investigative and administrative, non-prosecutorial acts, she is not entitled to absolute prosecutorial immunity. *Roberts v. Lau*, 90 F.4th 618, 620 (3rd Cir. 2024). Similarly, Defendant Donnelly's unauthorized demands for supplemental responses from Plaintiff, after Plaintiff had already responded to the complaint, and her threats to imminently bring additional charges if Plaintiff failed to comply, are decidedly not prosecutorial, and foreclose absolute prosecutorial immunity.

### No Absolute Judicial Immunity

The Virgin Islands Supreme Court, consistent with other jurisdictions, has identified its ODC as a quasi-judicial entity. *In re Burns*, 2020 VI 16, fn. 8 (2020).

For the performance of functions within their judicial duties, judges enjoy absolute immunity from claims for damages. *Supreme Court of Virginia v. Consumers Union of United States, Inc.,* 462 U.S. 1137, 1141, 103 S.Ct. 3124, 77 L.Ed.2d 1375 (1983) (citing *Pierson v. Ray*, 386 U.S. 547, 554-555, 87 S.Ct. 1213, 1217-1218, 18 L.Ed.2d 288 (1967)). However,

judicial officers are not immune from suit for injunctive relief.   *Supreme Court of Virginia v. Consumers Union of United States, Inc*., 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980).

### No Qualified Immunity

Absolute immunity protects individual government officials only where the function of their actions is discretionary (i.e., part of their job).  Fitzsimmons, Lau.  If a prosecutor engages in pre-complaint investigative work, which does not serve a prosecutorial function, they are eligible only for qualified immunity.  However, to be entitled to qualified immunity, that prosecutor must not violate a person's constitutional rights.

Here, while engaging in investigation and concocting and docketing a disciplinary complaint against Plaintiff, which is non-discretionary work, without a prosecutorial function, Plaintiff alleges that Defendant Bailey-Roka deprived him of his First Amendment rights to truthful, commercial free speech.

An attorney's right to engage in truthful, commercial speech has long been recognized as free speech protected by the First Amendment.  *Bates v State Bar of Arizona*, 433 US 350, 384, 97 SCt 2691 53 LEd2d 810 (1977).  To be sure, this is not to say that such free speech may not be regulated in any way.  *Ibid.*  There simply are Constitutional limits on such regulation.

While a government official can share her views freely and criticize particular beliefs in the hopes of persuading others, she may not use the power of her office to punish or suppress disfavored expression.  *Nat'l Rifle Ass'n of Am. v. Vullo*, 22-842, at *3 (May 30, 2024).  It has long been clearly established law that government actors may not take or threaten to take regulatory action against the promoters of disfavored, protected free speech with which they do not agree.  "The First Amendment prohibits government officials from relying on the "threat of invoking legal sanctions and other means of coercion . . . to achieve the suppression" of

disfavored speech." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963); *Bates v State Bar of Arizona*, 433 US 350, 384, 97 SCt 2691 53 LEd2d 810 (1977).

Here, it is alleged that Defendants Bailey-Roka and Donnelly have done to Plaintiff precisely what the First Amendment forbids: displeased with the content of Plaintiff's truthful free speech in reaching out to offer assistance to members of the bar suspended for failing to file Annual Registration Statements ("ARS"), Bailey-Roka investigated, gathered facts, concocted, and docketed *sua sponte* disciplinary complaint 2023-42 to silence Plaintiff, violating his clearly established First Amendment rights. Defendant Bailey-Roka's pre-complaint actions were investigatory and administrative in nature, not entitled to absolute immunity.

The U.S. Supreme Court has recognized that the coercive threat of disciplinary charges affecting an attorney's livelihood and license to practice law if the attorney fails to waive his Fifth Amendment rights to remain silent or to refuse to provide testimony against himself is a deprivation of the attorney's rights under the Fifth Amendment. *Spevack v Klein,* 385 US 511 87 SCt 625 17 LEd2d 574 (1967).

Now, both Bailey-Roka and Donnelly persist in numerous, continuing threats of imposing additional legal sanctions for "failure to cooperate" with them by filing a supplemental response to Case no. 2023-42, in violation of Plaintiff's clearly established Fifth Amendment rights to remain silent and to not give testimony against himself. *Spevack v Klein,* 385 US 511 87 SCt 625 17 LEd2d 574 (1967).

Bailey-Roka's and Donnelly's actions of threatening Plaintiff with additional attorney disciplinary charges did not serve judicial or prosecutorial functions. They cannot enjoy absolute immunity. Since their actions violated Plaintiff's clearly established Fifth Amendment rights, they have no entitlement to qualified immunity either.

*Lynch v. Donnelly et al.*, 3:24-cv-43, Memo iso Opposition to Joint Motion to Dismiss
Page 16 of 21

Qualified immunity protects all but the plainly incompetent and those who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Defendants' attorney disciplinary action seeks to suppress Plaintiff's truthful, non-deceptive commercial free speech and violate Plaintiff's ""clearly established" statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L.Ed.2d 396, 102 S.Ct. 2727 (1982).

It is Defendants Donnelly and Bailey Roka's job to assist the Virgin Islands Supreme Court in regulating the practice of law in the jurisdiction. They have a special duty to inform themselves of the law and to conduct themselves in accordance with it. In this case they have infringed on Plaintiff's clearly established rights under the constitution, while performing acts that serve no judicial or prosecutorial function. It is irrelevant whether they have done so out of incompetence or malice; they enjoy no qualified immunity, and are personally liable for the damages they caused.

### No Immunity Under V.I.S.Ct.R. 207.10

V.I.S.Ct.R. 207.10 provides, in pertinent part, that

> Members … of the ODC and its agents … shall be immune from civil suit
> for any conduct in the discharge of their official duties.

Defendants included, as Exhibit 3 to their MISO MTD [ECF 38], the Report and Recommendation of the Honorable Magistrate Judge Ryon McCabe of the United States District Court for the Southern District of Florida in matter 2:22-cv-14338. [ECF 28-3]. The report states, in pertinent part regarding V.I.S.Ct.R. 207.10, that the court "is skeptical that the Supreme Court of any given state or territory can pass a rule that overrides Congress."

As noted *supra*, in its interpretation of immunities available under Congress' 42 U.S. § 1983, the U.S. Supreme Court has taken a functional approach, allowing absolute immunity to judges for actions taken with a judicial function, and to prosecutors for actions taken with a prosecutorial function. Thus, actions taken by a member of the ODC which serve neither a

judicial nor prosecutorial function would not entitle that officer to absolute immunity. The ODC member would be entitled only to qualified immunity. Qualified immunity would not immunize the ODC officer from suit for her violations of clearly established federal statutory or constitutional rights of which any reasonable ODC officer would have known. As an independent contractor, serving as an ODC officer, Defendant Donnelly is not a government official, and may well have even less claim to qualified immunity for tasks outside her contractual functions. Qualified immunity protects all but the clearly incompetent or those who knowingly violate the law. *Malley v Briggs*, 475 US 335 (1986).

As Magistrate Judge McCabe correctly recognized, by enacting V.I.S.Ct.R. 207.10, the Virgin Islands Supreme Court cannot provide immunity to its ODC officers where Congress has denied it. To the extent that the Defendants invoke V.I.S.Ct.R. 207.10 seeking absolute immunity, they are not entitled to immunity for their actions which do not serve a judicial or a prosecutorial function. For their actions not serving a judicial or prosecutorial function – which would include (1) Defendant Bailey-Roka's pre-complaint investigation of Plaintiff, her opposing counsel, and concocting a frivolous-on-its-face *sua sponte* complaint to criminalize and silence Plaintiff's free speech in violation of his First Amendment rights, as well as (2) Defendants Donnelly's and Bailey-Roka's repeated and continuing threats to file additional disciplinary charges against Plaintiff if he refused to waive his Fifth Amendment rights to remain silent and not to provide testimony against himself – the Defendants violated Plaintiff's clearly established constitutional rights, of which any reasonable ODC officer in their positions would have known, and U.S. Supreme Court precedent entitles them to no immunity at all. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *Roberts v. Lau*, 90 F.4th 618, 620 (3rd Cir. 2024). Consistent with Magistrate Judge McCabe's report and recommendation, the Defendants in this case are not entitled to immunity under V.I.S.Ct.R. 207.10.

**Plaintiff has Alleged Sufficient Facts to Plead the Elements of All Counts**

In Count I of his FAC, Plaintiff alleges that, by their continuing acts of threatening to file new charges against him for failure to cooperate if he does not supplement his responses to disciplinary case 2023-42, the Defendants (sued in this count in their official capacities as territorial officials acting under color of territorial law) violate his clearly established Fifth Amendment right to remain silent (among other clearly established rights[6]). *Spevack v Klein,* 385 US 511 87 SCt 625 17 LEd2d 574 (1967). [ECF 26, ¶¶ 87-109]. Defendants Donnelly and Bailey-Roka unconstitutionally seek to coerce Plaintiff into building a case against himself, by unconstitutionally threatening Plaintiff with additional charges if he fails to supplement his response to 2023-42. They attempt to shift the burden to Plaintiff to prove his innocence, rather than accepting their own burden to prove false statements by clear and convincing evidence. Plaintiff also alleges that he stands to suffer imminent irreparable harm, in the form of impairment of his law license, if Defendants are not stopped from their threats. [ECF 26, ¶ 101]. Plaintiff's factual allegations satisfy the elements required for injunctive relief, namely claims (1) against territorial officials in their official capacities (2) acting under color of law (3) committing continuing violations of Plaintiff's clearly established Fifth Amendment rights under the Constitution (4) already causing and poised imminently to cause additional irreparable harm. [ECF 26, ¶¶ 87-109].

---

[6] The U.S. Supreme Court has struck down states' overbroad regulations restricting attorneys' commercial free speech which are not narrowly tailored to protect a compelling state interest. *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626, 658-59 (1985). In this case, it is not the regulation itself (V.I.S.Ct.R. 211.7.1 and 211.7.3), but its overbroad, unlawful enforcement application directed against Plaintiff by ODC Defendants Donnelly and Bailey-Roka to further their own, private agenda, not in furtherance of any compelling territorial interest, which must be enjoined. '[T]he party seeking to uphold a restriction on commercial speech carries the burden of justifying it.' " *Edenfield v. Fane*, 507 U.S. 761, 770, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993) (quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 71, n. 20, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983)). Yet, in Case 2023-42, Defendants Donnelly and Bailey-Roka have failed to advance any facts that would justify restraint of Plaintiff's truthful, commercial free speech for a lawful purpose.

In Count II of the FAC, Plaintiff alleged that Defendant Bailey-Roka's gathering of evidence against Plaintiff and formulation and docketing of a disciplinary complaint against Plaintiff occurred in the course of Bailey-Roka serving as Plaintiff's opposing counsel. Here, the actions by Defendant Bailey-Roka were investigatory, ministerial, and administrative, and served no prosecutorial or judicial function. Defendant Bailey-Roka can enjoy no absolute prosecutorial or judicial immunity for them. She is entitled only to qualified immunity, but cannot enjoy even this right if her non-prosecutorial or non-judicial actions violated Plaintiff's clearly established constitutional rights.

At the time of Defendant Bailey-Roka's actions, an attorney's right to engage in truthful, non-deceptive, commercial free speech, was clearly established. *Bates v State Bar of Arizona*, 433 US 350, 384, 97 SCt 2691 53 LEd2d 810 (1977). Any reasonable official in Defendant Bailey-Roka's position would have known that investigating, gathering information, and then concocting and filing an attorney disciplinary complaint seeking to criminalize an attorney's truthful free speech, communicated for a lawful purpose, was unconstitutional under the First Amendment. Because it was clearly established that her actions against Plaintiff were unconstitutional and violated Plaintiff's rights under the First Amendment, Defendant Bailey-Roka is not entitled to qualified immunity for those actions.

In Counts II and III of the FAC, Plaintiff alleged that Defendant Donnelly (directed by Defendant Bailey-Roka) repeatedly and unconstitutionally threatened Plaintiff with additional disciplinary charges if he failed to file a supplemental response to 2023-42. [ECF 26, ¶¶ 110-129, 130-146]. Their actions of repeatedly threatening Plaintiff, a respondent attorney, with additional disciplinary charges if he failed to file a supplemental response to a disciplinary action, may have had a prosecutorial end goal in mind, but they do not serve a prosecutorial function. At the time of Defendants' actions, the Fifth Amendment right of an attorney to be free from threats of impairment of his license for failure to provide supplemental responses

was clearly established. *Spevack v Klein,* 385 US 511 87 SCt 625 17 LEd2d 574 (1967). [ECF 26, ¶ 121, 137]. For this reason, for their continuing threats toward Plaintiff, Defendants not only are not entitled to absolute prosecutorial immunity, they are not entitled to qualified immunity either.

**Service of Process was Valid**

Plaintiff complied with the plain English requirements for effectuating service on employees of the Virgin Island judiciary, as set forth in Fed.R.Civ.P. 4 and V.I.R.Civ.P. 4.

Plaintiff retained a process server who served an original summons and a copy of the Verified Complaint to be served on the Governor of the Virgin Islands, the Attorney General of the Virgin Islands, and the Administrator of Courts, and Plaintiff filed the process server's affidavits of service in the DC/ECF. [ECF 27-29].

Plaintiff retained a process server who personally served a copy of the summons and Verified Complaint on Defendant Tanisha Bailey-Roka in St. Croix, Virgin Islands, and Plaintiff filed the process server's affidavit in the DC/ECF. [ECF 13].

Plaintiff retained a process server who personally served a copy of the summons and Verified Complaint on Defendant Kathryn Anne Donnelly in Flushing, New York, and Plaintiff filed the process server's affidavit in the DC/ECF. [ECF 14].

WHEREFORE Plaintiff Peter J. Lynch, Esq., *pro se*, respectfully requests that this Honorable Court Deny the Defendants' Motion to Dismiss.

October 29, 2024                                Respectfully,

*s/ Peter J. Lynch*
Peter J. Lynch, Esq., *pro se*
c/o FLAG LAW VI
PO Box 303300
St. Thomas, VI 00803
(340) 201-5955 c
(340) 776-7801 o
(888) 481-4960 f
pete@flaglawvi.com

*Lynch v. Donnelly et al.*, 3:24-cv-43, Memo iso Opposition to Joint Motion to Dismiss
<u>Page 21 of 21</u>

<u>**Certificate of Service**</u>

I hereby certify, under penalties of perjury, that on this 29th day of October, 2024, I filed the foregoing via the District Court of the Virgin Islands' DC/ECF electronic filing system, which serves a copy electronically on the below-listed counsel of record:

Paul Gimenez, Esq.
Marc Tepper, Esq.
Andrew Simpson, Esq.

<i><u>s/ Peter J. Lynch</u></i>